Good morning, Counsel. Good morning, Your Honors, and may it please the Court. My name is Katherine Eitenmiller, and I represent Keith Fino, the Plaintiff Appellant, in this case. I would like to reserve two minutes for rebuttal. All right. Please be aware that the time remaining is your total time. Thank you. All right. The overarching issues in this case are, first, the ALJ's failure to fulfill her heightened duty to fully and fairly develop the record, and, second, the ALJ's failure to adequately explain her decision with reasoning that meets the legal and evidentiary standards. Mr. Fino is a military veteran who receives all of his care through VA medical facilities, and the VA found him 100 percent unemployable based on findings from a compensation and pension examination. Is that part of the record that you contend was not adequately developed, the VA rating and the accompanying records? It is. That actually comes down to two separate arguments. First is the failure to develop by obtaining the C&P examination report, which is not in the record. However, there are objective medical findings from that examination which are summarized in the VA rating decision. And why wouldn't that be adequate for the ALJ to come to her decision? Our position is that is adequate or would have been adequate, but, unfortunately, the ALJ did not consider those objective findings. There is nothing within the ALJ's decision that indicates that she considered the objective medical findings from the C&P examination, as summarized in the VA rating decision. Go ahead. I think you're just a little bit ahead of me, which would make sense because I'm sure you know the record better than we do, but there are medical summaries, and I'm trying to figure out who prepared the summaries. It says progress notes and really bold print and medical summaries. I can turn to them if that's helpful to you. But here's where it pops up for me. There's sort of three or four different entries in medical records that make quite clear that diabetes, for example, was not controlled. Correct. And then there's a medical health summary. And in the health summary, it indicates somebody else has apparently gone through his records and mentions the diabetes and says two or three times that there's no mention of complication and that it is, quote, not stated as uncontrolled, which seems to me demonstrably incorrect. And I don't know who created these summaries. Is that from the VA? That is from the VA, and that is separate from the C&P examination findings. So we do have an argument related to Mr. Fino's uncontrolled diabetes. However, the C&P examination, the VA used the C&P examination report to find Mr. Fino 100 percent disabled from other impairments, which are service-connected. His diabetes, I do not believe, has been found to be a service-connected impairment. Okay, so getting back to Judge Rawlinson's question, because I think mine kind of overlaps hers, I'm trying to figure out what was missing and what they relied upon, because as you said, the VA decided that he was disabled. So what's the overlap? The compensation and pension examination is a comprehensive physical examination that the VA sent Mr. Fino for, and that was conducted in August 2011. That examination report is absent from the record. The VA rating decision does summarize objective medical findings, but the report itself is absent. Where is this report today? So my office attempted, beginning in April 2016, when we began representing Mr. Fino, we contacted the VA to obtain a copy of the report. And we finally received a copy of that report in March of 2018. So it took almost two full years. And this is really the problem, and I think the core issue, is that there is nothing in the ALJ's decision to indicate that she considered the objective medical findings as summarized in the VA rating decision. And the commissioner seems to have taken the position that they could have relied solely on that VA rating decision. And I agree. Had the ALJ done that, and had the ALJ considered the objective medical findings as summarized, I agree that that would be sufficient. That meets 20 CFR 404.15.13, subsection A1, requires the agency to consider all objective medical findings. If the case gets remanded, is that C and P report available? And if so, you've seen it. I haven't seen it. I don't think it's part of the record that we have before us, is it? I'm sorry? The report is not before us. It is not within this record. You have seen it. I have seen it. And your position is that you want that report to be before the ALJ on remand for the ALJ to consider? My position is that the objective medical findings, as summarized in the VA rating decision, conflict with Dr. Burnaby's findings, and that the ALJ did not resolve that conflict, nor consider those findings. What does that have to do with the C and P report? I'm unclear about that. On remand, because we have a copy of it, it would be made a part of the record. But had the ALJ attempted to obtain it? But you've seen the report. I have seen the report. Is that report relevant if there were to be a remand, or is it just an innocuous report? I'm not clear. It is relevant, yes. So it would be something of substantive consideration, in your opinion? Yes. Yes, Your Honor. I'm sorry. No, go ahead. I have one other matter, just for clarification. I see that there's an onset date, but I'm a little confused about whether it was correctly calculated in light of the fact that there's something in the record that he received additional income, I think about $3,000, for a few months after the so-called onset date. So I don't know whether or not this has to be clarified if we were to remand. Right. But I'm confused right now on the record as to whether that really would have anything to do with the correct onset date. It does not have anything to do with his disability onset date. He reported at the hearing and in multiple places in the record that he stopped working in January 2011. And there are earnings from the first quarter of January 2011. When he wrote a letter to the Appeals Council, unrepresented, because the ALJ used those earnings to discredit his testimony, he explained that he was paid vacation and sick leave pay, but was no longer working. So it's not — Can I ask you about that? Yes. Forgive me for interrupting, but right there, I have ER-247, a declaration from him, and it says I received $3,533 in the first quarter of 2011. And that's exactly as you describe it, according — but I can't tell when that declaration was admitted, because it says it's to the Appeals Court. Does he mean us, or does he mean the — No. It was submitted to the Appeals Council. So after the ALJ issued her unfavorable decision, he was unrepresented. At the time of the hearing, he was represented by a non-attorney. That non-attorney representative withdrew, and he was unrepresented and submitted this letter pro se to the Appeals Council, which is the agency's appeals council, after the ALJ decision. After the Appeals Council, it goes to the District Court, and now we're here. Okay. And so was he asked at the hearing about what about this reported — oh, sorry. Yeah. What about the reported income that showed up in the first quarter of 2011? Was he asked? He was. And there is some confusion within that testimony. He first clearly states, I last worked on January 2, 2011. And then the ALJ starts to ask him about income from — I think it's Temecula Painting or Premier Painting Company or something to that effect. And that is the early January 2011 income that is on his wage report. But that testimony becomes a little bit confused, I would say. He is stating different years, and it's not clear — it's at least not clear to me, it's record that Mr. Fino understood that she was asking about January 2011 income. And after she issued her unfavorable decision, he did write to the Appeals Council to clarify that. There's nothing in the — He didn't have earned wages is what you're — I think, what I'm understanding. They did pay him, right, some unused vacation time or whatnot. They paid him vacation time and sick leave. I assume that there are also December wages in that — in those earnings. But there's nothing in the record to indicate that Mr. Fino was painting or working in January 2011. Right. But that doesn't make the ALJ decision not supported by substantial evidence, if the ALJ could reasonably interpret the testimony in the way she did. But, Your Honor, it has to be clear and — there's a legal standard and an evidentiary standard. And it has to be clear and convincing. And it also has to be supported by substantial evidence. There is nothing in this record to indicate that Mr. Fino worked in 2011. He reported at multiple times, not only at the hearing, but also in his initial application. That's at page 212 of the excerpts of record. And within his testimony and also in a separate document before the ALJ hearing, that all of — every time he reported January 2011 as his end date, his end working date. And that's also consistent with the VA's finding. The VA found him entirely disabled as of, I think, early February 2011. They found that he was no longer working. But, counsel, the ALJ is not bound by the VA's determination. Would you agree? Yes, that is correct. And also the objective findings that are made in the VA report, what case authority are you relying upon to support your argument that the objective findings in the VA report must be considered by the ALJ? As part of the objective medical findings? What case are you relying upon? I'm relying on a regulation. That's 20 CFR 404-1513, subsection A-1. The agency must consider all objective medical evidence in the record. So, counsel, there's an indication — I think this is — I'm not sure if Judge Wallinson and I are following up on the same thing or not. But there's a finding that he had severe impairments of urinary incontinence and peripheral neuropathy. Were those taken into account by the ALJ? The ALJ discredited testimony related to bladder dysfunction. But I believe she did find that that was a severe medically determinable impairment at step two of the sequential analysis. And she did find peripheral neuropathy to be a severe medically determinable impairment as well. No, that's my point. They're found to be severe medical impairments. I'm trying to figure out how they are factored into the ultimate decision that this man can work. They don't seem to be accounted for, to me, in the bottom line. I agree. I agree. And that is the issue that we have raised, really, is that the ALJ — it's not clear to me from the ALJ's decision, within the four corners of the ALJ's decision, that she conducted a thorough examination of the treatment record, the full treatment record. For example, there is, as you mentioned, clear evidence that Mr. Funo's diabetes is uncontrolled. But within her decision, she considered it only at step two, stated that his diabetes was controlled with medication and accounted for no functional limitations for that impairment. In her decision, she did not make any inquiry at the hearing related to diabetes. Counsel, could I ask you where in your brief you made the argument regarding 20 CFR 404.1513A1 as being the basis for the failure to consider all objective medical findings? Where is that in your brief? So I apologize if that specific regulation is not cited. Where is that in your brief vis-a-vis that regulation? Well, we've essentially made — I have essentially made two separate arguments that relate to the CMP examination report. The first is that the CMP examination report is not in evidence and should have been. And the second is that the ALJ did not properly consider and did not provide specific valid and persuasive reasons to afford the VA rating decision less than — less than great weight. And one of the reasons that the ALJ gave was that the VA rating decision was not supported by objective testing and treatment history. And I do argue that the ALJ did not clearly consider all of the objective findings. But the specific argument you've — because I ask you for your best case authority for the proposition that it was incumbent upon the ALJ to consider the findings from the VA, and you cited to me 20 CFR 404.15 — .1513A1, but that is not in your brief. I think to that point I would say that the ALJ was clearly required to consider the VA rating decision and ordinarily should afford great weight to the rating decision. And in terms of case authority, I think our best cases are McCarty and McLeod v. Astrum. McLeod v. Astrum is really important. Because I'm talking about — it's very important to me the point that you made, that the objective medical findings made by the VA had to be considered, because our cases do not require that the ALJ specifically give any deference to a VA rating. So to me that would be an extension of our case law to say that the ALJ had to be considered. It has to specifically and definitively include within the medical analysis not only the record evidence from the providers who are involved in the social security process, but also the findings that are made by the VA. But, Your Honor, our cases, McCarty does make it clear that the ALJ is required to consider a VA rating decision, and those medical findings were made. And I understand your point, but to my point, in this record, and VA rating decisions take different forms. I've seen them in different ways. This is a rare case, I would say, where the objective findings are actually summarized within the decision. And if the commissioner takes the position that the agency need not obtain the CMP examination report because the summary findings were summarized within the VA rating decision, but also takes the position that the ALJ need not consider those findings, then that is contrary to its own regulations. And I did not base my argument around that regulation. I based it around McCarty and McCloud with regard to the VA rating decision. So we can disregard this regulation as a basis for your argument? No, Your Honor, you asked for the authority that states that the ALJ must consider all objective findings. Because that's the argument you made. That's the argument you made. That's why I was asking you for the authority that you used to support that argument. I apologize. I feel that I framed the arguments in a different fashion. I did not base it on the regulations. I did base it on McCarty, which states that the ALJ is required to consider it and required to provide specific valid persuasive reasons. And I continue to assert that those reasons that the ALJ provided are not specific valid or persuasive. All right. Thank you, counsel. You've exceeded your time, and I helped you along. So we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Michael Howard for the Commissioner. Your Honors, when someone claims to have extreme back pain and that their legs would suddenly give way because of nerve impingement, and that they would urinate or defecate themselves on a regular daily basis, agency regulations require that the ALJ consider these extreme claims in light of the entire record. In this case, Mr. Phenom... That entire record wasn't considered. That's the problem. Your Honor is asking about the VA examination findings. Yes, and I don't know that I've done one of these cases where we had this particular problem with the VA record being incomplete, so I'm not sure. But I did go back to look at the cases that were cited, and there's this McLeod case. And McLeod said we must apply the holding of McCarty, that the VA disability rating must be considered and ordinarily must be given great weight, together with the holding, in a case I can't pronounce, Tana Patina, that inadequacy of the record to allow proper evaluation triggers a duty of inquiry. So why is she wrong, that there was an error? And honestly, given that it took two years to get this information, I'm not really pointing fingers and blaming, it's just a matter at this point, doesn't it need to be considered in order to make sure this person has his fair hearing? Your Honor, when we look at McLeod and what was actually happening in the McLeod case, I think the issue becomes a bit clearer. Really, in McLeod, the court remanded because the ALJ did not even have the rating decision from the VA. And the ALJ knew that there was a rating decision out there somewhere, but had not obtained it. In this case, the ALJ had the rating decision, and that rating decision summarized the various clinical findings as... Your Honor, it decides that he's disabled. It decides that he's disabled, and they're supposed to give him great weight. The ALJ is allowed to discount that with persuasive, specific, and valid reasons, I believe is the standard. Isn't that very tough to meet that standard, with really specific reasons, if you don't have the underlying data from the VA? No, Your Honor. I would have actually several responses to that line of argument or that question. First of all, I think as an overall matter, kind of backing up from the details here, Mr. Pino is really overstating the importance of these clinical findings summarized in the VA rating decision. The examination that Mr. Pino is citing to you... Or that he's overstating the importance of what's missing. What do you mean? The summary of those findings from that missing examination. He's overstating the importance of the summary? Yes. Okay. So that shows that there was a positive straight leg raised test, and a slightly diminished strength out of four out of five level, and diminished reflexes that were not clinically significant. And that's what the VA report itself says. And that's the evidence the VA found significant. And when we just consider what that actually means, that is actually not that significant and damaging to the ALJ's decision. We only have basically one isolated straight leg raised test that's positive in the entire record. In a case where someone's claiming to have such severe nerve impingement that they would fall and urinate and defecate themselves on a regular basis. So as a general matter, this is a case with very weak objective evidence. And the one report that Mr. Pino's hanging his hat on here actually has far more equivocal findings than he would admit. Is that the C&P report you're talking about? Yes, Your Honor. I haven't seen it. It's not part of the record. I'm just curious. Have you seen it? I have not, Your Honor. I did not know. How can you talk about what's in a report that you have not seen? I mean, that's what really puzzles me. Just seeing that, you'd want to take a look at that report. Well, I would have a couple of responses to that question, Your Honor. The first is that the VA rating decision summarizes the findings that the VA found significant. So those appear to be the significant findings. It's unlikely that the VA also found that he had severe neuropathy or something like that and then did not note it in their rating decision. Also, as a more general matter... Your Honor, I would argue that that would be a speculative line of argument. The whole thing is speculative, counsel. That's my problem. We don't know what's in there. Your Honor, the ALJ had the VA rating decision. The Social Security Administration requested these records from the VA and obtained them, and this is what Social Security obtained. And even as Mr. Pino's counsel admitted, it took years for them, even them, to obtain this report. And there's a compelling public interest in the ALJs being able to close the record and decide the case. They have to decide many cases each month. Yes, but the process also allows for other evidence. And you mentioned a minute ago that she's hanging her hat on one missing report. But what about the MRI that wasn't available at the time? It does seem to show objective medical evidence, and it wasn't available then, but it is now. What do we do with that? Your Honor, I would have a few responses. The first one would be that Mr. Pino's representative, admittedly a lay representative, but their representative did not ask for the ALJ to hold the record open for this MRI report to be submitted, and then did not even submit it, even though it was just a very short time after the ALJ hearing. Did the ALJ know about the existence of the report? I believe, if I recall correctly, Mr. Pino mentioned he had an MRI coming up at the hearing. Let's stop there, because I'm a little confused about it. I mean, he was not represented by counsel. And I mean, I have an overriding sense that the ALJ had problems with his credibility and obviously didn't like him for whatever reason. But he seems to have problems from head to toe. The MRI, I think, dealt with his shoulder, if I recall correctly. I think the ALJ knew that there was an MRI that had been taken or was going to be taken. Can you clarify the record for me in that respect? Yes, Your Honor. Mr. Pino, as I mentioned, I believe he did say he had an MRI coming up. The ALJ did not end up having that in the record. But I would argue, maybe under a different set of facts, that would critically undermine the ALJ's decision. But if we look at the actual facts of this case, that is not the case. Well, let me ask you this, though. But that MRI, was that available to the Appeals Council at that stage of the litigation? Or was it first raised in the district court? Mr. Pino could have submitted it to the Appeals Council. There isn't a duty for the Appeals Council to develop the record if it's not decided. I just wonder whether or not it was available to the Appeals Council, whether they knew about it at that time. I don't, Your Honor, I don't believe the Appeals Council knew about it. I would have to check the letter. So we don't know that. But in any event, it was brought to the attention of the district court, I take it, and the MRI had been taken by that time, right? Yes, Your Honor. Actually, I believe I misspoke when I was just answering your question. Mr. Pino, I believe, did submit that MRI to the Appeals Council. I think so. And the Appeals Council said it pertained to a later time. And in our briefing, I would just — we did state that, because that seemed to be an error, saying that it pertained to a later time, that really, this should be considered under the Brews standard from the Ninth Circuit, which is where we just consider this as part of the record as a whole and whether it undermines the LJ's decision. But there's so much here. This person had problems from head to toe. You had this incontinence. You had this diabetes determination that slept through, which in my mind is somewhat a little bit questionable as well. And it just seems that on remand, this person should get another shake at this whole record. What do you say about that as a matter of fundamental fairness? I would respectfully and strongly disagree, Your Honor. We'll have the MRI. We'll have the C&P report. We'll have a full explanation of the diabetes condition. There's a lot we can ascertain. And also this issue about whether the starting date was correctly calculated, that may be a burden that he would have. But it just seems that there's a lot here that's unresolved that troubles me at least. Well, Your Honor, you raise several good questions there. As far as the MRI of the shoulder, it's important to note, and we made this point in our brief, that the ALJ did have evidence about that weightlifting shoulder injury that occurred in 2013. And that included a pretty thorough examination performed by a physical therapist, which did show reduced range of motion and tendinitis in the shoulder. Nothing better than an MRI, though. Well, Your Honor, again, there's, as an overall matter, the ALJ always needs to close the record and decide a case, and the issue regulations, agency regulations, as a general matter, leave these issues up to the ALJ's discretion about developing the record. Counsel, I would just like to explore for a moment the distinction between considering the rating decision of the VA and the underlying records of the VA. Our case authority does not compel consideration of the underlying records. I would completely agree, Your Honor. When we look at the distinctions the Court has drawn, and this is in various cases over time, and I believe the Turner case was cited in the briefing, and there's also a more recent case of Marsh, which isn't directly at issue in this case. But what we've seen is that the Court has not required the ALJs to wade through the entire hundreds of pages of medical records and discuss every single examination finding in the decision. But sometimes a treatment record can be so material if the doctor is saying, well, this person can't lift more than 10 pounds and therefore can't go back to work. Sometimes those comments will be hidden in the treatment records, and then the ALJ should discuss them. But there's no requirement the ALJ... I agree with everything you just said. So far we're tracking. But did you think there were not inconsistencies between that summary and the record that the ALJ did have that should have required further exploration? Is that your position? Your Honor, I would suggest that Mr. Pino overstates how significant those inconsistencies are. But I'm asking you for your take on it. Yes, Your Honor. The fact that he has a positive straight leg raise test on one occasion and otherwise very... You're not answering my question. Oh, I'm sorry, Your Honor. You're not answering my question. A simple question. I agree with you about the difference with the response that you gave to Judge Arlington's question. I think we're clear. And my question is, in this case, did you think that there were not inconsistencies that required further exploration so you could... The ALJ was in a position to assess that and provide the requisite specific reasons for discounting the VA's ratings. The ratings found him disabled. Well, Your Honor, the ALJ... And I'm hoping I'm answering your question. The ALJ did discuss the 80% disability rating with the finding of unemployability and did discount it. So we would argue that that satisfies the court's standard. If there are clinical findings mentioned in that rating decision, which vary somewhat over time, that's entirely foreseeable, and we would not see that as changing the ALJ's burdens. Okay. So let me ask you this, and, counsel, what is the strongest reason the ALJ gave for discounting the disability rating by the VA? Your Honor, I believe it would be the... The most specific. The objective evidence would be particularly compelling in this case, just given the fact that he is making extreme claims and that these are... The underlying objective findings are very benign or even just more equivocal, and they don't show these signs of severe nerve impingement in his legs that would cause things like incontinence. And the reports of even incontinence are far more equivocal and inconsistent than Mr. Fino's testimony would suggest. Okay. Thank you for your response, and thank you for your patience. Thank you. Your Honors, I might just touch on one more point just briefly, the issue of diabetes, which I did not... I believe, Your Honor, raise briefly and I did not address. I think maybe the briefing on both sides could be a little bit more clear on this issue, that the ALJ did, in fact, find that peripheral neuropathy was severe at step two, and then the ALJ did discuss that under the residual functional capacity, talked about the treatment records, but then the ALJ still had three medical opinions in this case, from an examining physician and two non-examining physicians, saying Mr. Fino could do medium work, and there's no contrary opinion from any treating physician. And for those reasons, we would say that the ALJ more than adequately discussed the issue of diabetes, and otherwise... It wasn't clear, though. You have to admit that. I mean, he didn't really directly deal with the step two determination in respect to diabetes. Am I wrong about reading the record that way? A little confusing to me? Your Honor, I think the ALJ could have made more clear that peripheral neuropathy is, in fact, caused by diabetes or related to it normally, but the ALJ did what we really see here as saying peripheral neuropathy is the real medical issue he has with his diabetes at this point. Even if it's uncontrolled, it's not otherwise injuring. He doesn't have retinopathy. It's not otherwise injuring his kidneys or doing other things that diabetes can do if it's uncontrolled for a long period of time. But he had diabetes. And that is not always a severe impairment, Your Honor, because to Social Security, the issue is... It doesn't take much to get past step two, though, when it comes to that type of determination, I suspect. I just don't think he made a correct step two determination. Well, it's not clear to me. In any event, you've done a great job arguing, but it seems that there's so much here that this person has suffered that if you look at the totality of it all, it just seems that fairness requires a remand to really get a better record here. That's just my take on it. But he did get past step two because we got to step five, correct? Yes, Your Honor. So even if there were an error in that, it wasn't because of the step two. Because if there had been a determination regarding diabetes not being disabled at step two, the inquiry would have ended there. Exactly, Your Honor. So you made it past that threshold. And really what the ALJ is pointing to is that the neuropathy in the feet, which, again, is not a consistent finding in the underlying medical records, and does not appear to be as severe as he claims at the hearing. But that's the only real way that diabetes has ended up limiting him so far. He has not, although he makes a general claim his diabetes causes other limitations, he has not pointed to other injuries to his various organs in his body. Maybe if he had a lawyer, it might have been a better record. I don't know. Counsel, what about incontinence? How is that taken into account? I mean, it seems like the ALJ considered to be that the issue was urgency, needed to be proximately located to a bathroom, and that's not how he describes it. So what do we do with that, please? Your Honor, I see my time is up, but I will, of course, answer your question. The ALJ found that I believe it was urinary urgency or something along those lines was severe at step two. And then in the RFC finding, we have a requirement of access to a restroom in the workplace. And throughout the decision, the ALJ is discussing the fact that while at the hearing, Mr. Fino is saying he is urinating and defecating himself on a regular basis and would be unable to even do a desk job, the underlying treatment records show him denying many of these symptoms over time. He's clearly denying bowel incontinence. He's occasionally complaining of urinary issues, but the way he presents them to his doctors is that it's related to medication. So, ostensibly, if this was an ongoing issue related to nerve pain and other things, that's not how he would present it. So your response is that the medical record contradicts his description of the severity of the problem? Yes, Your Honor. Okay. All right. Thank you, counsel. Thank you. Two minutes for rebuttal. Thank you, Your Honors. I'd just like to clarify that our position is that the CMP examination report should have been in evidence and that if it is the Commissioner's position that the summarized objective findings in the VA rating decision was sufficient, then we can agree on that. However, there is nothing in the ALJ's decision to indicate that the ALJ actually considered those objective findings. And I would also like to note that the two reviewing physicians who essentially agreed with Dr. Burnaby's findings and opined as to Mr. Fino's functional limitations based their opinions only on Dr. Burnaby's findings, and the CMP examination report nor the VA rating decision which summarizes those findings was not made available to those reviewing physicians. I'd also like to note just that Mr. Fino's diabetes became uncontrolled and worsened after Dr. Burnaby and after the CMP examination. So the treatment records, which the ALJ did not clearly consider or summarize in her decision, indicate that his diabetes was significantly worsened as of around January 2013, which is a later period. And there's also the injury to his left shoulder, which is a new impairment. So for the Commissioner to take the position, I guess, that Dr. Burnaby's examination report would be sufficient doesn't take into account those impairments which worsened or he sustained from an injury at a later time. So the 2013 date, was that after the hearing? No, Your Honor. That was before the hearing. The hearing was in January 2014. He received treatment and continuously requested treatment for his shoulder impairment. And an MRI was scheduled for about a year after he sustained the injury. The worsening diabetes was part of the medical record? Yes, Your Honor. As of January 2013, it was noted as uncontrolled and it continued to worsen. He was eventually put on insulin. He had a nurse who came and provided a home care program for him. She actually noted bladder dysfunction as well and noted that he required assistance with things like dressing and grocery shopping and other activities of daily living. And again, I just want to note that the most important thing before this Court is the ALJ's decision. And none of that has made its way into the ALJ's decision. It is not clear that she fully considered the treatment record. All right, Counsel. You've exceeded your time. Thank you, Your Honor. Thank you. Thank you to both Counsel. The case just argued is submitted for a decision by the Court.
judges: Rawlinson, Christen, Block